**NEWARK RADIO BROADCASTING ASSOCIATION, Appellant,**

v.

**FEDERAL COMMUNICATIONS COMMISSION, Appellee,**

**Global Broadcasting Group, Inc., Intervenor.**

No. 83–2161.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 19, 1984.

Decided June 7, 1985.

---

Peter Gutmann, Washington, D.C., with whom Vincent A. Pepper, Washington, D.C., was on the brief, for appellant.

David Silberman, Counsel, F.C.C., Washington, D.C., with whom Bruce E. Fein, General Counsel, and Daniel M. Armstrong, Associate General Counsel, F.C.C., Washington, D.C., were on the brief, for appellee.

James A. Koerner, Washington, D.C., with whom Frederick D. Cooke, Jr., and Carolyn A. Wimbly, Washington, D.C., were on the brief, for intervenor.

Before MIKVA and GINSBURG, Circuit Judges, and BAZELON, Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge MIKVA.

MIKVA, Circuit Judge:

Newark Radio Broadcasting Association ("Newark") appeals from a decision and orders of the Federal Communications Commission ("FCC") rejecting Newark's application for an interim radio license and awarding the interim license to Intervenor Global Broadcasting Group, Inc. ("Global"). This case is one of first impression, resulting from the Commission's first effort to hold a comparative interim licensing proceeding that specifically excluded any and all applicants for the regular license. Be-

cause we find that the Commission's decision was reasonable and supported by the record and further find that the issues of candor suggested by the appellant do not require reversal, we affirm.

### FACTS

This case affects—if only temporarily— the fate of the frequency formerly occupied by WHBI (FM), a foreign language radio station based in Newark, New Jersey. WHBI presented multiethnic programming in more than twenty languages ranging from Spanish and Italian to Bulgarian and Bengali. The station provided a service, described by all parties as unique, to the large immigrant and foreign populations of its listening area. The FCC found that for many listeners who spoke little or no English, WHBI provided the sole source of information on national news and local events. When the license came up for renewal, however, the FCC determined that the operator was guilty of so many regulatory violations that its renewal application had to be denied. *See Cosmopolitan Broadcasting Corp.,* 59 F.C.C.2d 558, *reconsideration denied,* 61 F.C.C.2d 257 (1976), *aff'd in part and remanded in part,* 581 F.2d 917 (D.C.Cir.1978), 75 F.C.C.2d 423, *reconsideration denied,* 79 F.C.C.2d 16 (1980), *aff'd per curiam,* Order No. 80–1902 (D.C.Cir. June 29, 1981), *cert. denied* 454 U.S. 1143, 102 S.Ct. 1003, 71 L.Ed.2d 295 (1982).

Following its decision to deny the renewal application, the FCC announced that it would accept applications to operate the frequency on an interim basis pending selection of a new regular licensee. In so doing, the FCC declared that

> no application for interim authority will be accepted for filing ... which includes any party who has or will have any employment or ownership interest in any application for a construction permit to use the frequency occupied by Station WHBI on a regularly licensed basis.

Public Notice, Feb. 3, 1982, *reprinted in* Joint Appendix ("J.A.") at 1.

This novel requirement was based on past experience, which, according to the FCC, demonstrated that permitting an applicant for the permanent license to operate on an interim basis gave that applicant an unfair advantage and prejudiced the outcome of the permanent licensing proceeding. Because WHBI served a major market, the New York metropolitan area, the FCC reasoned that there would be no difficulty in finding a qualified applicant who was content to operate in the interim without the prospect of becoming the regular licensee.

Seven organizations filed for the interim license and the applications were designated for oral argument before the Commission's Review Board on an expedited basis. The designation order declared all seven qualified. Argument was directed toward the standard comparative issues to determine "which of the above applications would, on a comparative basis, best serve the public interest" and which "in light of the evidence adduced ... should be granted." In re *Joseph Bahr,* 52 Rad.Reg.2d (P & F) 147, 149 (1982), *reprinted in* J.A. at 12.

The applicants filed comparative showings on September 8, 1982, briefs on September 30, 1982, and reply briefs on October 8, 1982. At a prehearing conference, the Board indicated that it intended to be guided but not controlled by the Commission's *Policy Statement on Comparative Broadcast Hearings,* 1 F.C.C.2d 393 (1965) (hereinafter, *"Policy Statement"*). It candidly acknowledged the "unique" nature of the proceeding and invited the applicants to make suggestions as to selection criteria and other matters. The Board also encouraged the applicants to consider mergers. Transcript of Conference, *passim, reprinted in* J.A. at 77–124; In re *Joseph Bahr,* 92 F.C.C.2d 114, 125 n. 7 (separate statement of N.B. Blumenthal), *reprinted in* J.A. at 264. Global Broadcasting announced that it was merging with two other applicants— Balkan Echo, Inc., and Alarcon, Hernandez & Cossio Associates—to form a new Global. Three other applicants—Multi-Ethnic Radio Philanthropies, National Black Media

Coalition, and Joseph Bahr—announced that they had merged to form Newark Radio Broadcasting Association, the present appellant. The seventh applicant, Latino TV Broadcasting Service, apparently rejected merger invitations. It participated in the initial expedited proceeding but ultimately withdrew voluntarily from contention.

On November 19, 1982, the Review Board released a ten-page opinion discussing the applications and designating Global the interim licensee. *See* In re *Joseph Bahr*, 92 F.C.C.2d 114 (Rev.Bd.1982), *reprinted in* J.A. at 253. Newark applied to the Commission for review of the Board's decision. Newark also moved, on January 12, 1983, to reopen the record and enlarge issues. Newark's motion was denied and the application for review set aside in a Memorandum Opinion and Order released July 8, 1983. The Commission refused to add issues because it found that Newark's allegations were not supported with sufficient specificity and were not inconsistent with Global's previous representations. The Commission concluded that it substantially agreed with the findings and conclusions that had led the Review Board to award the license to Global. *See* In re *Global Broadcasting Group*, 54 Rad. Reg.2d (P & F) 404 (1983), *reprinted in* J.A. at 345. Newark's petition for reconsideration failed for lack of a majority vote, which operates as a denial. Order, BC Nos. 82–531, 82–533 (F.C.C. Oct. 28, 1983), *reprinted in* J.A. at 439.

Newark has raised numerous arguments, some more weighty than others, as to why this court should reverse the Commission's determination. Our standard of review is, of course, a deferential one. This court need not agree with the FCC's determination; it need only find that the Commission's decision was reasonable and supported by substantial evidence. We do so find.

### Full Hearing

Newark contends that it was improperly denied a full hearing within the meaning of § 309(e) of the Communications Act of 1934. *See* 47 U.S.C. § 309(e) (1982). The record shows that Newark participated in the expedited proceeding voluntarily and without objection. Even if it had not, we believe that under the special circumstances of this case the modified proceeding was not unreasonable.

Newark was aware from the outset of the Commission's plan to employ streamlined procedures, and of the Commission's view that full evidentiary hearings were not required. Newark cites the Memorandum Opinion and Order as having mandated a full hearing by mentioning § 309(e). However, in that very opinion, the Commission stated that it was adopting most of the procedural suggestions put forth by applicant Latino in order to "promote a speedy disposition of this case," that it was setting the matter down for oral argument on an expedited basis before the Review Board, and wanted the Board to render a decision within 90 days. *See* In re *Joseph Bahr*, 55 Rad.Reg.2d (P & F) 147, 148 (1982), *reprinted in* J.A. at 10, 11. The opinion stated that the Board would have "broad discretion in its conduct of this case" and would be permitted to "establish its own schedule and rules of procedure." The opinion went on to say that "should the need arise" the Review Board "might consider" having testimony taken by an Administrative Law Judge, but that "we have long held that conflicting applications for interim authority are not entitled to a full evidentiary hearing." *Id.* Newark made no objection at that time, nor indeed at any point up until the Review Board rendered its adverse decision. The record indicates that Newark was represented by counsel in the agency proceedings and at all times participated actively. Under such circumstances, Newark's post hoc objection cannot be seriously entertained.

■ Even if Newark's objection were viewed as timely, we could not say that the Commission abused its discretion. While regular licensing procedures do involve a full hearing, *see Ashbacker Radio Corp. v. FCC*, 326 U.S. 327, 66 S.Ct. 148, 90 L.Ed.

108 (1945), we have allowed, where warranted, a reduction in the procedural panoply in instances of interim applications. *See, e.g., Beloit Broadcasters, Inc. v. FCC,* 365 F.2d 962 (D.C.Cir.1966) (interim authority may be awarded without a hearing if public interest would be served and the regular licensing proceeding will not be prejudiced). In this instance the Commission confronted, after the disqualification of the incumbent licensee, the need to maintain an existing station which provided a unique service in a major market. The Commission needed to select an interim operator as soon as possible because of the importance of the station to the public it served, the concern that service not be interrupted, the unacceptability of allowing the disqualified licensee to continue operation, and the likelihood that the proceedings for the permanent license would be protracted. Where such circumstances exist and where the Commission has expressly excluded applicants for the regular license from consideration, we cannot say that the Commission's decision to adopt abbreviated procedures is unreasonable or unlawful. This is particularly true where the procedures—whatever their drawbacks—did afford each applicant the opportunity to present its side and to dispute the contentions of others.

THE SCOPE OF THE COMMISSION'S DECISION

■ Newark next contends that the Review Board and the Commission erroneously restricted the considerations to be taken into account in reaching a decision. The contention is wholly without merit.

Newark disingenuously construes every criterion suggested but not adopted as the breach of a promise to consider additional criteria and every point not resolved in its favor as having been excluded altogether from the Commission's reasoning. None of the examples that Newark adduces establishes that the Board or Commission unreasonably excluded relevant considerations. The fact, for example, that Newark received no special credit for its plan to continue the station's multiethnic program-

ming overlooks the Commission's conclusion that all three applicants proposed similar plans and no significant distinctions could be drawn among them. *See* In re *Joseph Bahr,* 92 F.C.C.2d at 118, *reprinted in* J.A. at 257. Likewise, the Board's refusal to award Newark special points for its plan to donate profits to "activities co-extensive with the full range of needs of the ethnic community" cannot be regarded as an unreasonable exclusion. The Commission had made the donation of profits to charity a precondition of the application; Global plans to function as a not-for-profit corporation. The issue of disposition of profits thus became irrelevant, and the Commission was justified in so treating it.

Newark's mere disagreement with the Board's findings on these and other matters is not grounds for overruling the agency's determination.

ADEQUACY OF THE RECORD AND ACCURACY OF THE FACT FINDING

■ Although certain disputes might have benefited from the fuller examination and cross examination that more formal proceedings would have permitted, we have concluded above that under the circumstances of this case the Commission was not required to hold a formal evidentiary hearing. The informal proceedings did allow each applicant to introduce affidavits and other material challenging the contentions and showings of rival applicants; the proceedings also afforded each applicant an opportunity to respond to such challenges. Thus, the functional equivalent of a regular administrative record was created. Newark has failed to show that fuller proceedings would have yielded a substantially different picture. Newark has been unable to identify any relevant issues that it was precluded from raising in the expedited proceeding or any body of evidence that it was precluded from presenting.

For example, Newark claims the existence of a material dispute as to whether Emil Antonoff, a Global principal, actually had substantial broadcast experience. This alleged dispute is predicated on the affida-

vit—submitted by Newark to the Review Board—of a WHBI office manager. The affidavit states that Antonoff had never been formally employed at WHBI and had never held any title or position at the station. *See* J.A. at 369. The affidavit fails, however, to raise any material question about the extent of Antonoff's broadcast experience. The issue was one of broadcast *experience* rather than of formal employment at a station; Antonoff had merely averred that he had produced and directed numerous programs for WHBI, not that he held a formal salaried position; the affidavit's allegations that Antonoff rarely came to the station's studios "except to drop off tapes or to discuss his account" and had no connection with the station except as "a supplier of programming, which we broadcast" does not refute Antonoff's assertion that he produced programs for the station. (Global also introduced affidavits attesting to Antonoff's many years of work on programs aired by the station and articles in *TV Guide* and other magazines describing Mr. Antonoff's work in the field.)

Another allegedly material dispute concerned diversification and whether Global should have been given a demerit because Raul Alarcon, a Global principal, served as a programming consultant at a Spanish-language station in Hartford, Connecticut. Demerits would properly have been assigned if Alarcon's job involved significant managerial responsibility. While more evidence might have buttressed the determination, Newark's cry that it was denied any opportunity to develop evidence supporting its theory is disingenuous. In ordinary parlance, a "consultant" does not have significant managerial responsibility, and Newark failed to make even the most modest showing that Alarcon's powers and responsibilities at the Hartford station exceeded those implied by his title. There was nothing to prevent Newark from introducing affidavits describing the nature of Alarcon's position. Nor indeed was there anything to prevent appellant from deposing Alarcon. The Board was thus within its discretion in concluding that there was

no genuine dispute as to whether Alarcon held a significant managerial position and similarly no genuine dispute about any of the other issues which Newark now claims were inadequately developed or erroneously decided.

### BROADCAST EXPERIENCE AND MINORITY REPRESENTATION

Newark's contentions that the Commission improperly gave decisive weight to broadcast experience, while ignoring minority preference, must also be rejected.

■ Newark contends that the attention paid by the Commission to the prior experience factor represented an unforseeable and unacceptable departure from precedent. We disagree. The Commission consistently has taken the view that broadcast experience gives an operator a substantial advantage in the first years of the license but becomes less and less important over time. *See Policy Statement,* 1 F.C.C.2d at 395–96 & n. 8 ("Attributes of participating owners, such as ... their experience will also be considered"; previous experience will normally be deemed minor because it "confers only an initial advantage" and "lack of experience, unlike a high concentration of control, is remediable."). This view has led the Commission to give prior experience little weight in regular licensing proceedings. The same rationale, however, suggests that in a purely interim proceeding that will have no bearing upon the award of the permanent license, broadcast experience should have greater weight. In such a proceeding, the "initial" period is the only one at issue and there simply is not time for the applicant to "remedy" its deficiencies.

■ Newark also contends that the Commission ignored the minority representation factor in this case and has, in fact, adopted a new policy of excluding minority participation from its deliberations. If this were true, it would represent a serious departure from precedent and, consequently, occasion considerable concern. We conclude, however, that Newark's allegations

are unwarranted. The Review Board's opinion demonstrates that the Board made explicit findings as to the level of minority participation in each applicant, and that the Board gave Newark a higher rating than Global (60% as compared to 33.3%) on that factor. *See* In re *Joseph Bahr,* 92 F.C.C.2d at 120, *reprinted in* J.A. at 259. Newark, however, failed to win the license because it scored below Global on a number of other factors. The Board implicitly acknowledged the importance of minority representation when it suggested that Newark's strong showing on that factor rendered it virtually equal to Global in the overall category of integration despite the fact that Newark had scored below Global on other integration factors—broadcast experience and local residence. Global's superior evaluation on the diversification factor, however, was decisive. As the Board pointed out in its opinion, diversification is a primary goal, whereas integration is merely one of several factors considered predictive of best practicable service to the public. *See Policy Statement,* 1 F.C.C.2d at 394–96.

■ In reviewing the Board's determination, the Commission revised the Board's findings and reduced the credit awarded Global for local residence. The Commission determined, however, that Global's superiority in broadcast experience alone was so marked as to entitle Global to a "substantial" preference in the integration category as a whole. The Commission's use of the adjective "substantial" may be difficult to justify. We cannot say, however, that the Commission's decision to uphold the award of the interim license to Global was unreasonable or unlawful. Given the special importance of prior experience in a purely temporary proceeding and the Commission's finding that the disparity between the two applicants in terms of broadcast experience exceeded the disparity between the two in terms of minority participation, the Commission's decision to give the edge to Global is neither inconsistent with precedent nor unreasonable. When Global's slight but unambiguous superiority in diversification is combined with its

superiority in integration, the Commission's decision is amply justified. That the difference between the applicants is small and the decision ultimately hinges on minor distinctions is, if anything, a further argument for deference to the agency's conclusions.

### CANDOR

The most troubling question raised by appellant is that of candor. The appellant's contentions on the issue, however, do not rise to the level necessary for reversal.

Newark challenged Global's eligibility, alleging among other things that Jack Chadrjian, a principal of Global, was also a principal of Caprice Broadcasting, an applicant for the permanent license. The possibility that Global had violated the conditions of the interim license emerged in a deposition taken by Comserv Broadcast Group in conjunction with the permanent proceeding. The information was brought to the attention of the FCC, which considered the matter and decided that the showing made was insufficient to establish that Chadrjian was a principal in both companies. The FCC concluded that he was merely the attorney for both. The Commission assured the court, in oral argument, that it was continuing to monitor the situation and would act on further developments if necessary.

■ Because the candor requirement is intended primarily for the benefit of the Commission rather than for the benefit of other applicants, because the Commission has considered the matter and is satisfied no material misrepresentation has occurred, and because the Commission has stated its intention to monitor the matter and take action if necessary, we cannot say that the issues of candor are such as to require reversal of the decision in this case.

### CONCLUSION

This case involves the FCC's first experiment with conducting a comparative interim proceeding which excludes all applicants for the regular license. We hold that the

decision to employ streamlined procedures in this case was within the agency's discretion and was consistent with the rationale of our precedents on interim licensing. This conclusion, of course, does not suggest that such streamlined procedures would be acceptable in a regular licensing proceeding or in any interim proceeding from which applicants for the regular license had not been excluded. We further conclude that in a purely interim proceeding such as this one the Commission may, within its discretion and consistent with the rationale underlying its precedents, accord greater weight to the applicant's prior broadcast experience. Under the special circumstances of this case, therefore, we find that appellant has failed to establish that the Commission has committed any error of law or fact which could require reversal under the standard set forth in the Administrative Procedure Act; accordingly we affirm.

*It is so ordered.*