**NEW SOUTH BROADCASTING CORPORATION, Appellant,**

v.

**FEDERAL COMMUNICATIONS COMMISSION.**

No. 87–1303.

United States Court of Appeals,
District of Columbia Circuit.

Argued May 15, 1989.

Decided July 7, 1989.

Howard W. Simcox, Jr., George R. Borsari, Jr., Washington, D.C., for appellant.

C. Grey Pash, Jr., Atty., F.C.C., with whom Diane S. Killory, Gen. Counsel, Daniel M. Armstrong, Associate Gen. Counsel, and David Silberman, Counsel, F.C.C., Washington, D.C., were on the brief, for appellee.

Before MIKVA and D.H. GINSBURG, Circuit Judges, and WILL*, Senior District Judge.

Opinion for the Court filed by Circuit Judge MIKVA.

MIKVA, Circuit Judge:

A radio broadcaster, New South Broadcasting Corp. ("New South"), appeals a decision of the Federal Communications Commission ("FCC" or "Commission") denying it a preference for its proposal to serve a community, Fairforest, South Carolina, that is currently without a local broadcast facility. The FCC is required under section 307(b) of the Communications Act to "make such distribution of licenses * * * among the several States and communities as to provide a fair, efficient, and equitable distribution of radio service to each of the same." 47 U.S.C. § 307(b). In a proceed-

---

* Senior District Judge Hubert L. Will of the United States District Court for the Northern District of Illinois, sitting by designation pursuant to 28 U.S.C. § 294(d).

ing involving mutually exclusive applications, the Commission awarded a license to Beacon Broadcasting Corp. ("Beacon"), which proposed to serve Morganton, North Carolina, a city already served by two co-owned radio stations, instead of to New South. The question presented is whether the Commission has changed its interpretation of section 307(b) without providing an adequate explanation. We conclude that it has not, and affirm the Commission's decision.

## I.

New South applied to the FCC to change the frequency and increase the power of its existing AM station WASC and to change that station's community of license from Spartanburg, South Carolina to Fairforest, South Carolina, without relocating WASC's studio or transmitter. Under a then-existing Commission rule, which has since been deleted, New South could not apply for a change in frequency or power unless it proposed, *inter alia,* to offer a first or second local service, *see* 47 C.F.R. § 73.37(e)(1)(ii) (1984); *cf. Report and Order, Deletion of AM Application Acceptance Criteria in § 73.37(e) of the Commission's Rules,* 102 F.C.C.2d 548, 552 (1985) (eliminating the requirement). Spartanburg already had more than two local radio stations licensed to it, so that New South was forced to propose a new community of license if it wished to increase its broadcast power.

Beacon applied to the Commission to construct a new AM radio station in Morganton, North Carolina. This application was technologically incompatible with New South's proposal. Following an evidentiary hearing, an administrative law judge ("ALJ") determined that New South's application could not be granted because Fairforest was not a "licensable community" for the purposes of section 73.1120(a) of the Commission's rules, 47 C.F.R. § 73.1120(a) (1988). *See Beacon Broadcasting,* 104 F.C.C.2d 811, 817 (ALJ 1985).

Fairforest is an unincorporated place on the outskirts of the larger city of Spartanburg. It has no legally defined boundaries, although it is shown on the General Highway Map of Spartanburg County prepared by the South Carolina Department of Highways and Public Transportation. *See* 104 F.C.C.2d at 815. One of New South's directors testified before the ALJ that he saw a map in the offices of the Spartanburg County Planning Commission entitled "Neighborhood Statistical Area, Spartanburg County Map." *See id.* at 815. This map was never introduced into evidence in the proceedings before the Commission. *See id.* The map depicted an area called "Neighborhood 11," which the director took to be Fairforest, and showed that the boundaries of Neighborhood 11 were Interstate 85 on the north, Interstate 26 on the east, U.S. 29 on the south, and Road 122 on the west. *See id.* Data compiled by the Bureau of the Census indicate that in 1980, Neighborhood 11 had a population of 2,941. *See id.* at 816.

Fairforest has no local government of its own. *See* 104 F.C.C.2d at 816. It contains the offices of a state-appointed magistrate and a U.S. Post Office, which has its own zip code and serves as an address for mail directed to post office boxes. There is no carrier delivery from the post office. *See id.* Within the area bounded by the four roads, there are approximately 57 business establishments, including gas stations, a lumber yard, a paper company, food stores, restaurants, a drug store, a barber shop, and a drive-in movie theater. *See id.* at 816. There are also three public schools, *see id.* at 817, and six churches, *see Beacon Broadcasting,* 2 F.C.C. Rcd 3469, 3471 (1987).

The ALJ concluded that Fairforest did not possess the requisite indicia of a "community," including "political, commercial, social, and religious organizations and services serving the community," and "a sense of unity and involvement in community concerns as shown by evidence that the residents function as and conceive of themselves as a community around which their interests coalesce." 104 F.C.C.2d at 817 (quoting *Mighty–Mac Broadcasting Co.,* 101 F.C.C.2d 303, 306 (Rev.Bd.1985), *review denied,* FCC No. 86–127 (Mar. 24, 1986)).

In dictum, the ALJ opined that if Fairforest could be found to be a "community," then New South would receive a preference under section 307(b) because Morganton, North Carolina—the area that Beacon proposed to serve—already had two existing, albeit co-owned, radio stations, whereas New South was proposing the first local service for Fairforest. *See* 104 F.C.C.2d at 819. The ALJ also noted that Beacon was entitled to a moderate diversification preference because one of New South's principals had an ownership interest in five other stations, and that Beacon qualified for an integration preference because its 52–percent owner proposed to serve as station manager. *See id.* at 820. Overall, the ALJ concluded, Beacon was the preferred applicant under the standard comparative issue.

New South appealed to the Review Board, which upheld the ALJ's determination that Fairforest was not a licensable community. *See Beacon Broadcasting,* 104 F.C.C.2d 808, 809–10 (Rev.Bd.1986). New South then appealed to the full Commission, which sustained the award of the license to Beacon, but reversed the ALJ's decision that Fairforest was not a licensable community. The Commission found that New South had satisfied its burden of proving that Fairforest was a " 'geographically identifiable population grouping' and hence a community for purposes of Section 307(b)." 2 F.C.C. Rcd at 3471 (quoting *Revision of FM Assignment Policies and Procedures,* 90 F.C.C.2d 88, 101 (1982)). While acknowledging that "[i]t is to be presumed, in the first instance, that a first local station in Fairforest is to be preferred over a third in Morganton," 2 F.C.C. Rcd at 3471, the FCC nonetheless refused to award New South a preference. The Commission compared the case before it to *Ruarch Associates,* 99 F.C.C.2d 338 (Rev. Bd.1984), *aff'd,* 101 F.C.C.2d 1358 (1985), in which the Commission had refused to award a section 307(b) preference to a broadcaster who proposed to provide the first local service to a small town. *Ruarch* recognized what has been called the "quiet village" exception to section 307(b) preferences.

The Commission noted that "the disparity in population in this instance is more considerable than in *Ruarch,*" 2 F.C.C. Rcd at 3472, because Morganton is almost four-and-a-half times larger than Fairforest. The Commission determined that Morganton, as the county seat and largest town of Burke County, North Carolina, is more "importan[t] * * * to [its] environs" than Fairforest, which is located less than a mile from the city limits of Spartanburg, and at 2,941 persons is dwarfed by Spartanburg proper (pop. 43,968 in 1980) and the Spartanburg urbanized area (pop. 100,706 in 1980). *Id.* Furthermore, the Commission found that Morganton has only one broadcast "voice," because the two radio stations currently licensed to it are co-owned. *See id.* The FCC concluded that "[o]n balance, we are unable to say that the net benefit cognizable under Section 307(b) of New South's proposal for Fairforest is significantly greater than the benefit to be had from establishing a first competitive broadcast service in Morganton." *Id.* (footnote omitted). Commissioner Quello, in a separate concurring statement, would have affirmed the ALJ and Review Board decisions on the ground that Fairforest was not a licensable community. *See* 2 F.C.C. Rcd at 3473.

Beacon filed a petition for limited reconsideration, in which it requested the FCC to revisit its decision on the community-status issue. New South did not move for reconsideration. In its opinion on reconsideration, the Commission affirmed its prior decision, stating that Fairforest was "a so-called 'quiet village.' " 2 F.C.C. Rcd at 7563. The Commission explained that its section 307(b) analysis "was based on and significantly influenced by the record evidence demonstrating the meager nature and the limited extent of the political, economic, social and other needs of Fairforest as a proposed station location." *Id.*

New South appeals.

## II.

 New South maintains that the Commission's decision in the case *sub judice* is inconsistent with the "quiet village"

model as articulated in *Ruarch* and related cases. We disagree. The Commission is entitled to considerable deference when construing the terms of its enabling statute, *see Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984), and in interpreting policies of its own creation, such as the quiet village doctrine, *see Tallahassee Branch of the NAACP v. FCC,* 870 F.2d 704, 710 (D.C.Cir. 1989). Although "[d]ivergence from agency precedent demands an explanation," *Hall v. McLaughlin,* 864 F.2d 868, 872 (D.C.Cir.1989), where a reviewing court "can ascertain that the agency has not in fact diverged from past decisions, the need for a comprehensive and explicit statement of its current rationale is less pressing," *Hall,* 864 F.2d at 872. We find that while the Commission's decision is not a model of clarity, "[its] path may reasonably be discerned." *RKO General, Inc. v. FCC,* 670 F.2d 215, 221 (D.C.Cir.1981) (quoting *Bowman Transportation, Inc. v. Arkansas-Best Freight Co.,* 419 U.S. 281, 286, 95 S.Ct. 438, 442, 42 L.Ed.2d 447 (1974)), *cert. denied,* 456 U.S. 927, 102 S.Ct. 1974, 72 L.Ed.2d 442 (1982).

When mutually exclusive applicants seek authority to serve different communities, the Commission has traditionally implemented its mandate under section 307(b) by granting a preference to the applicant who proposes to serve the community without an existing radio station, *see FCC v. Allentown Broadcasting Co.,* 349 U.S. 358, 362, 75 S.Ct. 855, 858, 99 L.Ed. 1147 (1955). One danger of such an approach is that broadcasters will exploit the Commission's rules by specifying a small unserved community as the city of license, while in reality serving a much larger adjacent community:

> The Commission's quest to assure fairness, flexibility and rationality in the practical implementation of § 307(b) without, at least, appearing arbitrary has been fraught with difficulties. The timeless problem has come, of course, in striving to (1) assure that every separate "community of appreciable size" has adequate local radio service, while (2) ensur-

ing that broadcast applicants have not simply manipulated our flexible rules and processes to garner a wholly artificial benefit by specifying a small community as their city of license, though nonetheless intending to (a) achieve merely a "technical" § 307(b) preference in a comparative case, or (b) serve a larger, adjacent community nearby.

*Debra Carrigan,* 100 F.C.C.2d 721, 725 (Rev.Bd.), *recon. denied,* 101 F.C.C.2d 218 (Rev.Bd.1985), *review denied,* 104 F.C.C.2d 826 (1986), *aff'd mem. sub nom. Bernstein/Rein Advertising, Inc. v. FCC,* 830 F.2d 1188 (D.C.Cir.1987); *see also The Suburban Community Policy, the Berwick Doctrine and the De Facto Reallocation Policy,* 93 F.C.C.2d 436, 439 (1983) ("preferences could create incentives for applicants to try to prevail on the § 307(b) issue by designating as the community of license an underserved community proximate to a larger, more lucrative community, which was the intended recipient of the service").

The Commission has developed policies aimed at preventing possible exploitation of its section 307(b) preferences. Thus, it has determined that "even if 'community' status is warranted, that status is by no means dispositive of the next and critical question of whether that 'community' is entitled to a § 307(b) preference." *Debra Carrigan,* 101 F.C.C.2d 218, 222 (Rev.Bd.1985). Under the "quiet village" doctrine, the Commission has refused a preference to applicants proposing to provide first aural transmission service to certain "very small communities," *Reeder v. FCC,* 865 F.2d 1298, 1305 (D.C.Cir.1989) (*per curiam*). A community with a relatively small population, ill-defined boundaries, and meager political, economic, social, and other needs for a first local broadcaster may be denied a preference over a larger community already served by one or more stations. *See Sunshine Broadcasting, Inc.,* 2 F.C.C. Rcd 7559, 7560 (1987), *aff'd mem. sub nom. L.B.C., Inc. v. FCC,* 865 F.2d 1329 (D.C.Cir.1988); *see also Mighty–Mac Broadcasting Co.,* 101 F.C.C. 2d 303, 309 n. 7 (Rev.Bd.1985) (denying

preference on the ground that a community was "too minor"). Substantial evidence in the record must support the Commission's conclusion, *see Harrell v. FCC*, 267 F.2d 629, 632 (D.C.Cir.1959). Where the Commission determines that a clearly established community with palpable broadcast needs exists, the quiet village doctrine does not apply. *See Bie Broadcasting Co.*, 81 F.C.C.2d 1, 24–29 (Rev.Bd.1980), *review denied*, FCC No. 81–376 (July 31, 1981).

Historically, the Commission has treated section 307(b) preferences not as talismans dispositive in their own right but merely as "presumptions [that] may be rebutted" by a competing applicant seeking to operate in a larger community with a greater need for service. *Santee Cooper Broadcasting Co.*, 99 F.C.C.2d 781, 786 (Rev.Bd.1984) (internal quotes omitted), *recon. denied*, 100 F.C.C. 2d 469 (Rev.Bd.1985), *modified on other grounds sub nom. Womens' Broadcasting Coalition, Inc.*, 59 Rad.Reg.2d (P & F) 730 (1986), *aff'd mem. sub nom. Plantation Broadcasting Corp. v. FCC*, 812 F.2d 1443 (D.C.Cir.1987). "[T]he presumption in favor of first local transmission service does not result in an automatic Section 307(b) preference. Rather, the relative needs of the competing communities must be evaluated, and any countervailing factors weighed against the presumptive need for at least one local broadcast outlet." *Ruarch Associates*, 101 F.C.C.2d at 1360– 61; *see also Cherokee Broadcasting Co.*, 17 F.C.C.2d 121, 124 (1969) (community with population of 2,235 and two daytime-only AM stations awarded preference over community with population of 1,406 and no local service; winning proposal also provided 17,000 more persons with first nighttime service); *Wilmer E. Huffman*, 32 F.C.C. 1, 3 (1962) (second competitive daytime service, which was also first nighttime service for more than 9,000 people, outweighed need of 4,447–person community for first local service); *cf. FM Channel Assignments*, 51 Rad.Reg.2d (P & F) 25, 29 (1983) ("favoring a second assignment to a large, dynamic community over a first assignment to a very small community is not inconsistent with the Commission's mandate to assign frequencies in a fair and efficient manner"). The Commission's policy has been flexible, emphasizing the particular facts of the individual case and "endeavor[ing] in each § 307(b) case to carefully assay the evidence and to apply that § 307(b) principle most apposite to the case at bar." *Debra Carrigan*, 100 F.C.C.2d at 727.

We find that the Commission's determination that Fairforest is a "quiet village" is consistent with this approach and must be upheld. In its decision below the FCC noted that "[i]t does not necessarily follow that an applicant will be awarded a preference for proposing to serve a locality to which no existing station is licensed merely because it produces the minimal showing required to establish that the locality qualifies as a 'licensable' community," 2 F.C.C. Rcd at 3472 n. 6, and that "[a] more stringent showing as to the community's distinctiveness or relative significance may have to be made before the applicant will be awarded a dispositive preference for proposing to serve it," *id.* (citing cases). This declaration is nothing more than a restatement of the Commission's policy that there is a "distinction between defining a community of 'appreciable size' for single community licensing purposes * * * and for mutually exclusive licensing purposes." *Ruarch Associates*, 99 F.C.C.2d at 342. The Commission has recognized licensable communities as small as 660 persons, *see Musical Heights, Inc.*, 29 F.C.C. 1 (1960); to hold that all such communities must automatically receive preferences in multiple applicant situations would be to handcuff the Commission and invite manipulation of its section 307(b) policy. As the FCC explained in its order on reconsideration, "the threshold community-status issued played a crucial role in [its] deliberations in this case." 2 F.C.C. Rcd at 7563. The Commission advised that while section 307(b) considerations might be "determinative" in cases "where service is proposed for a clearly established, separate and distinct community with palpable political, economic, social and other needs," *id.*, that was not the case here. Instead, the record evidence demonstrated "the meager nature

and limited extent of the political, economic, social and other needs of Fairforest as a proposed station location." *Id.*

New South contends that the FCC has departed from past precedent in two respects. Because New South raised these arguments, at least implicitly, in its briefs before the Commission, and because the Commission necessarily passed on them in its decision when it applied the quiet village test, New South is not precluded from asserting the arguments now, even though it did not petition for reconsideration below. *See* 47 U.S.C. § 405.

New South first asserts that Fairforest is too large to be a quiet village; the 1980 population of Neighborhood 11, which is apparently Fairforest, was 2,941, higher than any previous quiet village. *See Mighty–Mac Broadcasting Co.*, 101 F.C.C. 2d 303, 308–09 (Rev.Bd.1985) (pop. 710); *Santee Cooper Broadcasting Co.*, 99 F.C.C.2d 781, 787 (Rev.Bd.1984) (pop. 541); *Ruarch Associates*, 99 F.C.C.2d at 341 (pop. 752); *see also Debra Carrigan*, 100 F.C.C.2d at 731 (noting that in *Santee Cooper* and *Ruarch*, "population [was] under 1000 in both cases"). New South insists that an essential prerequisite of a quiet village is a population below the 1,000–person figure mentioned in *Carrigan*, and that the FCC's decision in the instant case is therefore in error. We disagree.

The Commission has never established 1,000 persons, or any other specific population size, as an ironclad threshold requirement for a quiet village. The FCC has cautioned that its preference policy is "not intended to be applied in a rigid and mechanical fashion," *FM Channel Assignments*, 51 Rad.Reg.2d at 29, and has in the past denied preferences to communities larger than Fairforest, *see Wilmer E. Huffman*, 32 F.C.C. 1, 3 (1962) (pop. 4,447). Not surprisingly, the FCC explained in its decision below that population alone is not determinative in ascertaining whether a community is a "quiet village":

It is not a material basis for distinguishing this case from *Ruarch* that the population of Edinburg was well under a thousand whereas Fairforest's is close to three thousand. In weighing its need for transmission service against that of another community, a community's population size is only one of many factors to be considered.

2 F.C.C.2d Rcd at 3472 n. 8. We find that the Review Board's language in *Carrigan* mentioning the 1,000–person figure was purely descriptive of past cases and not the announcement of a binding definition of the quiet village test. *See Debra Carrigan*, 100 F.C.C.2d at 727 (noting that its description of the test was intended merely "to simplify and to synthesize" prior Commission decisions).

New South also maintains that a necessary component of the quiet village test is an overlap of signals, so that all competing applicants would serve both communities. In *Debra Carrigan*, for example, the Review Board noted that in both *Santee Cooper* and *Ruarch*, "the primary signal contours of all applicants would have covered both competing communities, and the competing communities were in such close proximity that the location of the respective studios would have made no material difference." 100 F.C.C.2d at 732. In this case, however, Fairforest and Morganton are some 60 miles apart, and there has been no showing that a station based in one would be able to serve the other.

Again, however, we conclude that while the Commission in its descriptions of past cases has sometimes outlined the quiet village test in the manner recounted by New South, the FCC has never proclaimed as a matter of formal doctrine that overlap of signals is required in order to find a quiet village. To the contrary, the Commission has always portrayed the quiet village concept, and section 307(b) policy generally, as a flexible tool to be molded and adapted to the particular circumstances of the individual case. As a matter of logic, there is no reason why overlap of signals is required in order to deny a preference to a quiet village, and we decline to restrict the Commission's ability to adjust its section 307(b) policy to the exigencies of the myriad situations it faces.

\* \* \* \* \* \*

Because we find that the Commission did not err in determining that Fairforest was a "quiet village," we hold that it was justified in denying New South a section 307(b) preference. The FCC, of course, is free to alter its policies in the future, so long as it provides an adequate explanation of its actions. We hold only that the Commission's decision to apply the quiet village doctrine in the case before us was a reasonable one.

We have no occasion to pass on language in the Commission's opinion suggesting that if the quiet doctrine were not dispositive of the case, additional hearings would be required to assess the need of Spartanburg for New South's service before the broadcaster would be permitted to change its community of license to Fairforest, *see* 2 F.C.C. Rcd at 3472 n. 9. We agree with the Commission that its recent grant of an application for a permit to construct a new television station in Morganton is not of determinative weight and does not require a re-opening of the proceedings. *See Cleveland Television Corp. v. FCC*, 732 F.2d 962, 973 n. 13 (D.C.Cir.1984); *Bie Broadcasting Co.*, 81 F.C.C.2d 1, 28–29 (Rev.Bd.1980).

The decision of the Commission is

*Affirmed.*