952 F.2d 507
 293 U.S.App.D.C. 151
 MARLIN BROADCASTING OF CENTRAL FLORIDA, INC., Appellant,
v.
FEDERAL COMMUNICATIONS COMMISSION, Appellee,
Reece Associates, Limited, Intervenor.
CENTRAL FLORIDA TELEVISION, LTD., Appellant,
v.
FEDERAL COMMUNICATIONS COMMISSION, Appellee,
Reece Associates, Limited, Intervenor.
MAGIC CITY BROADCASTING, INC., Appellant,
v.
FEDERAL COMMUNICATIONS COMMISSION, Appellee,
Reece Associates, Limited, Intervenor.
REECE ASSOCIATES, LIMITED, Appellant,
v.
FEDERAL COMMUNICATIONS COMMISSION, Appellee.
HIGHLAND COMMUNICATIONS, LTD., Appellant,
v.
FEDERAL COMMUNICATIONS COMMISSION, Appellee,
Reece Associates, Limited, Intervenor.
 Nos. 90-1505, 90-1517, 90-1521, 90-1524 and 91-1012.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Oct. 31, 1991.
Decided Jan. 7, 1992.
 
 [293 U.S.App.D.C. 152] Appeals from Orders of the Federal Communications commission.
 William H. Crispin, with whom Dean R. Brenner, Washington, D.C., for Central Florida Television, Ltd., Lewis I. Cohen and Roy W. Boyce, Washington, D.C., for Highland Communications, Ltd., and Paul A. Zevnik, Washington, D.C., for Magic City Broadcasting, Inc., were on the joint brief, [293 U.S.App.D.C. 153] for appellants in Nos. 90-1517, 90-1521 and 91-1012.
 Barry A. Friedman, Washington, D.C., was on the brief for Reece Associates, Ltd., appellant in No. 90-1524 and intervenor in Nos. 90-1505, 90-1512, 90-1517 and 91-1012.
 Martin E. Firestone, Washington, D.C., entered an appearance for Marlin Broadcasting of Central Florida, Inc., appellant in No. 90-1505.
 Sue Ann Kanter, Counsel, F.C.C., with whom Robert L. Pettit, Gen. Counsel, and Daniel M. Armstrong, Associate Gen. Counsel, Washington, D.C., were on the brief, for appellee in all cases.
 Before D.H. GINSBURG, SENTELLE and HENDERSON, Circuit Judges.
 Opinion for the court filed by Circuit Judge KAREN LeCRAFT HENDERSON.
 KAREN LeCRAFT HENDERSON, Circuit Judge:
 
 
 1
 The Federal Communications Commission (Commission) granted Reece Associates (Reece) a license to build a new UHF television station in Orlando, Florida. Three unsuccessful applicants, Central Florida Television, Ltd. (Central Florida), Magic City Broadcasting, Inc. (Magic City) and Highland Communications, Ltd. (Highland) now appeal from that licensing decision. All of the appellants claim that the grant of the license to Reece should be vacated because the Commission improperly awarded Reece one hundred per cent quantitative integration credit. Specifically, they claim that the Reece application was sham and that the Commission improperly varied from the information contained in Reece's application and improperly applied its policy regarding the role of limited partnership interests in computing Reece's integration credit. In addition, Central Florida argues that the Commission failed to weigh properly the local residence and civic involvement of its owner as well as its female ownership. Also, Magic City claims that the Commission improperly denied it one hundred per cent integration credit. Finally, Highland alleges that it was denied due process because the Commission allegedly failed to consider its application for review in rendering a final decision.
 
 
 2
 We conclude that the Commission's assessment of Reece's integration credit is within its statutory mandate and that its decision is supported by substantial evidence. We also conclude that the Commission properly applied its comparative criteria to each of the other applicants. We therefore affirm the Commission's decision.
 
 I. FACTUAL BACKGROUND
 
 3
 Reece originally filed its application as a corporation owned fifty-one per cent by Marsha Reece and forty-nine per cent by her husband, Rudolph Reece. Both Reeces planned to be actively involved in the day-to-day management of the station. The Reeces are black and, at the time of the application, they had lived in the Orlando area for eight to nine years and had been active in various civic activities. Both had some broadcasting experience.
 
 
 4
 After filing their initial application, the Reeces met with Robert Herpe. Herpe told them he was interested in establishing two trusts for the benefit of his daughters and in making the trusts limited partners in Reece Associates. Sometime before May 6, 1985, the "B cutoff date" in this case,[1] the Reeces asked for and received a written commitment from Herpe that the trusts would be sufficiently funded to allow the trusts to participate as seventy-five per cent equity owners of Reece. In reliance on this assurance, Reece amended its application on the B cutoff date by certifying that it had reasonable assurance of its financial ability to construct and operate a television station.
 
 
 5
 [293 U.S.App.D.C. 154] Reece's amended application also gave notice of its change from a corporation to a limited partnership. Under the new structure, the general partners were Marsha Reece, owning one per cent equity, and RA Communications, Inc. (RAC), owning twenty-four per cent equity.[2] RAC was owned by Marsha Reece (95%) and Rudolph Reece (5%). The Reeces conceded that they increased Mrs. Reece's proportional ownership in an effort to strengthen their application. Because the Herpe trusts were not fully formed by the B cutoff date, and because Florida law prohibits registration of a limited partnership unless a limited partner is specified, Reece initially registered in that State with Mr. Reece "standing-in" as a limited partner.
 
 
 6
 Central Florida was a limited partnership formed by Marita Valentine Sapp. Sapp was the sole general partner and the proposed general manager of the station. At the time Central Florida's application was filed, she had been a resident of the Orlando area for over fifteen years. Sapp is of Hispanic descent, had been active in civic activities and had some broadcasting experience.
 
 
 7
 Magic City was a corporation owned by four individuals, all of whom proposed to participate full time in the operation of the station. Ernesto Gonzalez-Chavez, a thirty-five per cent owner, owned two additional businesses. Gonzalez-Chavez did not intend to divest himself of those business interests.
 
 
 8
 According to its application, Highland was a limited partnership with six limited partners owning ninety per cent equity and one general partner, Carmen Reid, owning ten per cent equity. Reid, a black female, was the office manager of a law firm. She had no broadcast experience and had never owned a business.
 
 
 9
 II. REECE'S INTEGRATION CREDIT AND QUALITATIVE ENHANCEMENTS
 
 
 10
 As background, in 1965 the Commission released its Policy Statement on Comparative Broadcast Hearings, 1 F.C.C.2d 393 (1965) (Policy Statement), which established a system of awarding broadcast licenses designed to produce "the best practicable service to the public, and ... a maximum diffusion of control of the media of mass communications." Id. at 394; see also Ventura Broadcasting Co. v. F.C.C., 765 F.2d 184, 187 (D.C.Cir.1985). To meet these goals, the Commission first looks at the degree to which an applicant's owners will be integrated into the station's management and assigns integration credit. Id. at 188. This "quantitative" credit is "qualitatively" enhanced if the integrated owners possess certain other characteristics such as minority or female status, local residence in the station's coverage area, civic participation in that area or prior broadcasting experience. Id. Qualitative enhancements, however, cannot overcome distinct quantitative differences. See, e.g., Absolutely Great Radio, Inc., 95 F.C.C.2d 1023, 1029 (1983), remanded on other grounds sub nom. Ventura Broadcasting, supra.
 
 
 11
 An FCC Administrative Law Judge (ALJ) concluded that Reece was entitled to one hundred per cent integration credit because both Reeces proposed to participate full time in station management. Marlin Broadcasting of Cent. Fla., 3 F.C.C.R. 4699, 4730 (ALJ 1988) (Initial Decision ). In addition, based on Reece's revised structure which increased Mrs. Reece's ownership interest, the ALJ found that Reece's integration proposal was "enhanced by 100 percent local residence, 100 percent civic participation, 100 percent credit for minority ownership, 95 percent plus credit for female ownership and 100 percent credit for broadcast experience." Id. While the Commission's Review Board agreed that Reece should receive one hundred per cent integration credit, it rejected the revised ownership structure, finding it an inaccurate representation of the station's actual management. Marlin Broadcasting of Cent. Fla., 4 F.C.C.R. 7945 (Rev.Bd.1989) (Review Board Decision), reconsideration denied, 5 F.C.C.R. 322 (Rev.Bd.1990) (Reconsideration Order ). Noting "the [293 U.S.App.D.C. 155] record demonstrates an essential parity of ownership interests and managerial responsibility as between the married Reeces," the Review Board concluded that the Reeces would be regarded "as no better, nor worse, than the [sic] two 50%/50% 'general' partners." Id. at 7949. This decision, which affected Reece's qualitative enhancement for female ownership, was upheld by the Commission. Marlin Broadcasting of Cent. Fla., 5 F.C.C.R. 5751 (Commission Order), reconsideration denied, 5 F.C.C.R. 7446 (1990).[3]
 
 
 12
 The appellants assert that Reece's application should have been dismissed as sham because it did not accurately reflect the division of control between the Reeces. In response, the Commission asserts that its policy is to deny integration credit only when an applicant's proposal is "wholly unreliable." The Commission claims that in other cases its policy is to attribute ownership interests based on its view, from the record, of the manner in which the applicant will operate.
 
 
 13
 The Commission must " 'identify and eliminate from participation' those applicants who are not bona fide." Metro Broadcasting, Inc. v. F.C.C., --- U.S. ----, 110 S.Ct. 2997, 3025 n. 48, 111 L.Ed.2d 445 (1990) (quoting Fullilove v. Klutznick, 448 U.S. 448, 487-88, 100 S.Ct. 2758, 2779-80, 65 L.Ed.2d 902 (1980)). The Commission sometimes dismisses applications as sham for integration purposes when it appears that passive or limited partners would actually control the day-to-day operations of a proposed broadcast station. See, e.g., Royce Int'l Broadcasting, 5 F.C.C.R. 7063 (1990), reconsideration denied, 6 F.C.C.R. 2601 (1991) (all integration credit denied where limited partner actively participated in partnership affairs and in fact dominated partnership activities); Doylan Forney, 5 F.C.C.R. 5423, 5424-25 (1990) (defective integration proposal where limited partners could dissolve partnership or sell partnership assets without concurrence of general partners); Mabelton Broadcasting Co., Inc., 5 F.C.C.R. 6314, 6315-18 (Rev.Bd.1990) (all integration credit denied where limited partners chose unknown black female with no broadcast experience to be general partner seventy-two hours before application deadline and after several other potential general partners had declined). The Commission has stated that it denies integration credit in such cases because of its uncertainty regarding the extent to which the active owners will exercise final control over the station's management. See Royce, 5 F.C.C.R. at 7064. Reece's application causes no such uncertainty. It is undisputed that the station will be managed solely by the Reeces. We therefore affirm the Commission's decision to award Reece one hundred per cent integration credit.
 
 
 14
 We must also address the Commission's authority to adjust an application to reflect accurately the actual division of management responsibilities among the applicant's general partners. We have found no statute or case law prohibiting the Commission from taking such action. Furthermore, the Commission enjoys broad discretion to interpret and apply its own policies. New South Broadcasting Corp. v. F.C.C., 879 F.2d 867, 870 (D.C.Cir.1989). The Commission has held that an applicant may "structure its proposal in a manner that is believed most likely to prevail in a comparative proceeding if the proposal is bona fide." KIST Corp., 102 F.C.C.2d 288, 292 n. 9 (1985), aff'd sub nom. United Telecasters, Inc. v. F.C.C., 801 F.2d 1436 (D.C.Cir.1986) (mem.), cert. denied, 481 U.S. 1050, 107 S.Ct. 2182, 95 L.Ed.2d 839 (1987). But the requirement that an application be bona fide does not require the Commission to dismiss an application which, in its opinion, does not reflect the true division of managerial responsibility among an applicant's general partners. The Commission has the discretion, in furtherance of its goal of maximizing service to the public, to attribute ownership interests based on its [293 U.S.App.D.C. 156] record review of the manner in which the applicant will operate.
 
 III. REECE'S CORPORATE STRUCTURE
 
 15
 According to its policy established in Attribution of Ownership Interests, 97 F.C.C.2d 997, 1022-23 (1984), the Commission does not consider properly insulated limited partners in determining integration credit. The Commission has held, however, that if an individual owns equity in a broadcast station as both a general and a limited partner, his limited partnership interest is counted for integration purposes. Cotton Broadcasting Co., 4 F.C.C.R. 1781, 1782 (1989). The appellants claim that, because Mr. Reece was Reece's limited partner on the B cutoff date, the holding in Cotton Broadcasting dictates that his limited partnership interest be included in determining Reece's integration credit. The Commission responds that Mr. Reece was simply a "stand-in" for the Herpe trusts and his temporary role as limited partner should have had no effect on the application. We must therefore determine whether the Commission may properly treat Mr. Reece's limited partner status as of the B cut off date as nominal only.[4]
 
 
 16
 The Commission has often ignored technicalities of state law in determining if an applicant meets the Commission's policy goals. See id. ("The Commission generally has refused to consider state law when the state law is not relevant to the Commission's policies."); cf. Signal Ministries, Inc., 104 F.C.C.2d 1481, 1494 (Rev.Bd.1986), review denied, 2 F.C.C.R. 1259 (1987), aff'd sub nom. Adelphi Broadcasting Corp. v. F.C.C., 838 F.2d 571 (D.C.Cir.1988) (mem.) ("[B]ecause the purposes underlying our comparative policies differ from those of the state in regulating business entities, our analysis is not necessarily complete merely because the organizational structure chosen by the applicant technically complies with the formalities of state law."). In view of Reece's amended application which stated that "none of the limited partners are or will be involved in any material respect in the business or operation of the station," and in view of the record which reflects that Mr. Reece was temporarily listed as a limited partner merely to satisfy the requirements of Florida law, the Commission did not abuse its discretion in disregarding his limited partnership status for integration credit purposes.[5]
 
 
 17
 IV. COMPARATIVE DIFFERENCES AMONG THE APPLICANTS
 
 
 18
 A. Central Florida Television, Ltd.
 
 
 19
 Central Florida disagrees with the Commission's qualitative enhancement findings. It argues that the Commission did not sufficiently weigh its female ownership and the local residence and civic participation of its owner and also challenges the amount of credit given to Reece.
 
 
 20
 The Review Board Decision demonstrates that the Commission's findings, which adopt the Review Board's findings, are supported by substantial evidence. [293 U.S.App.D.C. 157] First, the Review Board noted that the difference between the Reeces' eight to nine years of local residence versus Sapp's fifteen years should result in only the "very slightest preference" to Central Florida under Commission precedent. See Review Board Decision, 4 F.C.C.R. at 7955 (citing Vacationland Broadcasting Co., 94 F.C.C.2d 485, 496 (Rev.Bd.1984)). Next, in concluding that Reece had a slight advantage in civic participation, the Review Board relied on specific portions of the record indicating that Mrs. Reece had been a member of a national service organization and had been active in the Food and Drug Administration Health Fraud Task Force and the Central Florida Association of Black Journalists and Broadcasters. Id. at 7955-56. Although the Review Board acknowledged Central Florida's one hundred per cent female ownership as compared to Reece's fifty per cent female ownership, it concluded that Reece's advantage in civic participation, broadcast experience and comparative signal coverage outweighed this factor.[6] Because the difference between Reece and Central Florida is small and because the ultimate decision depends on minor distinctions, we defer to the Commission's conclusion. See Newark Radio Broadcasting Ass'n v. F.C.C., 763 F.2d 450, 456 (D.C.Cir.1985) ("That the difference between the applicants is small and the decision ultimately hinges on minor distinctions is, if anything, a further argument for deference to the agency's conclusions.").
 
 
 21
 B. Magic City Broadcasting, Inc.
 
 
 22
 Magic City challenges the ALJ's finding that Gonzalez-Chavez would not devote full time attention to managing the proposed station. The ALJ based his decision on the fact that Gonzalez-Chavez worked more than full time in his two businesses and that, according to his testimony, Gonzalez-Chavez had no plans to divest himself of those businesses. Initial Decision, 3 F.C.C.R. at 4731. The ALJ's findings were upheld by both the Review Board and the Commission.
 
 
 23
 Applicants bear the burden of proving how they will effectuate their integration proposals. See, e.g., Cuban-American Ltd., 5 F.C.C.R. 3781, 3785 (1990). In integration cases, the trier of fact is clothed with the authority to "build and parse an integration evidentiary record in order to determine the effectuation intentions of the principals by factual proof or permissible inferences therefrom." Kennebec Valley Television, Inc., 2 F.C.C.R. 1240, 1242 (Rev.Bd.1987). We believe that the ALJ permissibly concluded from Gonzalez-Chavez's testimony that he would not give full time attention to the station.[293 U.S.App.D.C. 158] C. Highland Communications, Ltd.
 
 
 24
 Highland's claims are primarily procedural. The ALJ decreased Highland's integration credit to ten per cent based on an earlier Commission holding. See Initial Decision, 3 F.C.C.R. at 4732-33 (citing Independent Masters, Ltd., 104 F.C.C.2d 178 (Rev.Bd.1986)). In reviewing Highland's application, the Review Board acknowledged that the ALJ's reliance on Independent Masters was incorrect but upheld the award of only ten per cent integration credit on a different ground. It concluded from the record that Highland's general partner would not in fact be managing the station's affairs. See Review Board Decision, 4 F.C.C.R. at 7953-54. Highland complains that the Review Board improperly based its decision on an issue not raised in any exception to the Initial Decision.
 
 
 25
 Highland claims that a Commission rule limits the Review Board to considering issues raised by exception. See 47 C.F.R. § 1.277(a). That section, however, provides that parties waive any objections not raised in exceptions. Id. Here, however, the Review Board considered the matter sua sponte. We believe that the applicable rule is set out in 47 C.F.R. § 1.279, which authorizes but does not require the Commission to limit its review to those issues raised in exceptions. Under this rule, the Review Board could permissibly address all issues relevant to assigning Highland's integration credit.[7]
 
 
 26
 Highland also asserts that it was denied due process because the Commission's order denying review fails to mention Highland as having filed an application for review. We reject this argument. Although paragraph 16 and footnote 3 in the Commission Order listing the parties that had filed applications for review do not mention Highland, see Commission Order, 5 F.C.C.R. at 5753 & n. 3, Highland is included among the parties listed in the caption. JA 140. In addition, the Order states that "[a]ll eight" applicants sought review. Finally, the Commission specifically addressed Highland's arguments in the Reconsideration Order, 5 F.C.C.R. at 7446. Because the Commission is not required to provide expressly the reasons for denying Highland's application for review, see 47 U.S.C. § 155(c)(5) ("in passing upon applications for review, the Commission may ... deny such applications without specifying any reasons therefor"), we conclude that the Commission has demonstrated that it considered Highland's arguments.[8]
 
 
 27
 For the foregoing reasons, the petitions for review are
 
 
 28
 Denied.
 
 
 
 [1]
 Under the Commission's procedures for television construction permit applications, the first application for a construction permit triggers the "A cutoff period" during which mutually exclusive applications may be filed. This is followed by the "B cut off period" during which parties may file petitions to deny applications and applicants may amend their applications as of right (with certain limitations not relevant here). This period ends on the "B cutoff date." See 47 C.F.R. §§ 73.606(b), 73.3522(a)(2), 73.3572(d), 73.3584(a)
 
 
 [2]
 The Herpe trusts continued to own the remaining seventy-five per cent equity
 
 
 [3]
 The Commission emphasized that its decision to treat the Reeces as equal partners for integration purposes was based on the record of their activities in prosecuting their application and not on the basis of their marital status. Commission Order, 5 F.C.C.R. at 5752-53
 
 
 [4]
 The appellants argue that Mrs. Reece misrepresented the status of Reece's relationship with the Herpe trusts as of the B cut off date. They allege that she claimed in her deposition that she had no binding agreement with Herpe before the B cut off date but she testified at the hearing that she had a binding agreement with Herpe before that date. In fact, the record reflects that Mrs. Reece testified at deposition that no agreement existed before the A cut off date. JA 425. Later in her deposition she testified that she did have a binding agreement with Herpe as of the B cut off date. JA 428-429. Her deposition testimony and her hearing testimony are therefore consistent. To the extent that any inconsistency exists, however, the Review Board found that Mrs. Reece did not intend to deceive the Commission. See Review Board Decision, 4 F.C.C.R. at 7949. That finding is not clearly erroneous
 
 
 [5]
 The appellants also claim that Mr. Reece's status as a limited partner results in an impermissible "variance" between Reece's application and its integration proposal. See Sarasota-Charlotte Broadcasting Corp., 6 F.C.C.R. 1665, 1665-66 (1991) (integration proposal rejected where information in integration statement varied from statements in application). Because we uphold the Commission's treatment of his limited partner status as an immaterial accommodation to state law, any variance is formal only and therefore the Sarasota-Charlotte holding is inapplicable
 
 
 [6]
 The Review Board Decision states: "even if a very slight overall 'integration' preference were ceded to Central Florida, it would nevertheless be outweighed by Reece's comparative signal coverage preference." 4 F.C.C.R. at 7956. In its reply brief, Central Florida asks us to remand this case for treatment in accordance with a recent Commission order that alters the way in which signal coverage will be treated in comparative broadcast hearings
 Before 1990, the Commission did not consider existing noncommercial broadcast stations in deciding whether to assign a new commercial channel to a community, see Kaldor Communications, Inc., 98 F.C.C.2d 292, 294 n. 4 (Rev.Bd.1984), and in determining comparative coverage preferences among competing applicants, see FBC, Inc., 95 F.C.C.2d 256, 260-61 (Rev.Bd.), reconsideration denied, 96 F.C.C.2d 976 (Rev.Bd.1983), review denied, FCC 85-309 (1985). In Valley Broadcasters, Inc., 5 F.C.C.R. 2785, 2787-88 (1990), however, the Commission decided that noncommercial stations would be taken into account in deciding station allotment. The Valley Broadcasters holding was recently extended to include comparative coverage preference determinations. See Channel 32 Broadcasting Company, 6 F.C.C.R. 872 (Rev.Bd.1991). Although Valley Broadcasting was issued while these proceedings were pending, Channel 32 was not issued until after the Commission order had been released.
 Because Central Florida did not raise below the issue of considering noncommercial stations in the comparative coverage decision and because Channel 32 did not represent the Commission's policy at the time Marlin Broadcasting was decided, we decline to remand on the ground of comparative coverage. See Alegria I, Inc. v. F.C.C., 905 F.2d 471, 472 n.* (D.C.Cir.1990) (new rules not in effect at time challenged order issues do not affect disposition of case on appeal); California Ass'n of the Physically Handicapped, Inc. v. F.C.C., 840 F.2d 88, 94 n. 12 (D.C.Cir.1988) (court need not consider arguments not raised before Commission).
 
 
 [7]
 We note that although the ALJ disposed of Highland's application on other grounds, he did discuss the issues that the Review Board later found determinative. Initial Decision, 3 F.C.C.R. at 4732. Highland thus had notice that these issues were relevant to its application
 
 
 [8]
 A footnote in the Review Board Decision states that, if Highland had received the integration credit it requested, further investigation would have been necessary regarding the involvement of some of Highland's limited partners in another application before the Commission. See Review Board Decision, 4 F.C.C.R. at 7957 n. 18. Highland argues that the reference to the other application was improper. Highland's argument is unavailing because the Review Board later explained that this issue was a non-decisional one. Review Board Reconsideration Order, 5 F.C.C.R. at 322